**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charity Mitchell,<br><br>  Plaintiff,<br><br>v.<br><br>American Airlines, Inc.,<br><br>  Defendant. | No. CV17-2470-PHX DGC<br><br>**ORDER** |

Pro se Plaintiff Charity Mitchell sued Defendant American Airlines alleging breach of contract and a violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq., ("ADA"). Doc. 41. The Court dismissed Plaintiff's breach of contract claim (Doc. 54), and Defendant now moves for summary judgment on the remaining ADA claim (Doc. 71).[1] The motion is fully briefed. Docs. 71, 72, 74-76. For the following reasons, the Court will grant Defendant's motion.

**I.  Background.**

The following facts are undisputed unless otherwise noted.[2] The Court will consider a fact undisputed "[i]f a party fails to properly support an assertion of fact or

---

[1] Defendant also moves for summary judgment on Plaintiff's retaliation claim (Doc. 71 at 1 n.1, 16), and Plaintiff seems to advance a retaliation argument (Doc. 74 at 8). But the Court already found that Plaintiff's third amended complaint does not assert a claim for retaliation. Doc. 54 at 6 n.2. The Court will not address these arguments.

[2] Citations are to page numbers attached to the top of pages by the Court's ECF system, not to original numbers on the document pages.

fails to properly address another party's assertion of fact as required by Rule 56(c)."[3] Fed. R. Civ. P. 56(e); LRCiv 56.1(b).

In 2004, Plaintiff began working for Defendant as a customer service agent ("CSA"). Doc. 72-1 at 10-11. Plaintiff's responsibilities included checking in and re-routing passengers, getting passengers to their planes, and working in the baggage area and passenger assistance center. *Id.* at 11. Because the airline industry is competitive, customer service was an important aspect of Plaintiff's duties. *Id.* at 13.

A collective bargaining agreement ("CBA") between Defendant and Plaintiff's union ("the Union") governed the terms of Plaintiff's employment. *Id.* at 16. Defendant's performance policy included a "progressive discipline plan" for CSAs, with increasingly severe consequences for misconduct, including "a non[-]disciplinary coaching session, a level one, level two, [and] level three suspension, [and] discipline or termination." *Id.* at 19. Under the policy, if misconduct was sufficiently serious, Defendant could bypass the progressive discipline and opt for termination. *Id.* at 19. Defendant's company policy prohibited employee rudeness or disrespect to passengers. *Id.* at 59-60.

Defendant furloughed Plaintiff in February 2010, and Plaintiff later transferred to Charlotte, North Carolina. *Id.* at 31-32. Plaintiff then transferred to Phoenix, Arizona in December 2010. *Id.* at 33. Between December 2010 and January 2011, Plaintiff received four complaints from passengers and other employees. Doc. 72-2 at 6-19. The complaints described Plaintiff's "sour attitude" and "rude" and "demeaning" behavior, and reported that she was "harsh, coarse, . . . very unfriendly," "condescending," and "hostile." *Id.* at 8, 11, 16. Plaintiff "insult[ed] [passengers] and their intelligence," and "yelled at [a] woman . . . about the quality of her English . . . in front of the entire plane."

---

[3] Plaintiff fails to properly address Defendant's assertions of fact or support her own assertions of fact in paragraphs 12-40, 46-57, 60-69, 71-75, 77, 79-82, 84, 86. Doc. 74. The Court previously directed Plaintiff to familiarize herself with and follow both the Federal Rules of Civil Procedure and the Local Rules for the District of Arizona in its Case Management Order (Doc. 34), at the case management conference on October 18, 2017, and also at the conference on May 3, 2018, regarding motions for summary judgment.

*Id.* at 11. Plaintiff used profane language and disrespect in an argument with a flight attendant, and was absent from her post during a shift for an hour and forty-five minutes, causing her to miss an assigned flight. *Id.* at 18. Pursuant to its progressive policy, Defendant issued Plaintiff a performance level 1 discipline on January 30, 2011. Doc. 72-2 at 18-19.

Between February 2011 and April 2011, Plaintiff received four complaints. Doc. 72-2 at 20-29. She mocked passengers of size in view of other passengers by holding her arms out and stomping around (*id.* at 21), and she "pounded" on the lavatory door demanding a flight attendant exit (*id.* at 23). Plaintiff was rude and argumentative to several passengers on multiple occasions, including a passenger traveling with a service dog. *Id.* at 25-29. Defendant issued Plaintiff a performance level 2 discipline on April 22, 2011. *Id.* at 31.

Between May 2011 and April 2012, Plaintiff received at least eleven complaints. *Id.* at 33-57. Passengers reported that she was rude and gave frustrating customer service, and they expressed doubt about flying with Defendant again because of their experience with her. *Id.* at 33-34. One passenger reported that Plaintiff was "the rudest, snarkiest, most condescending" employee of Defendant's that he had "ever encountered in [his more than five] years of weekly travel." *Id.* at 46. An employee reported an incident when Plaintiff, to a man with a visible physical impairment, stated: "you're mumbling and I can't understand you. . . . Do you mumble all of the time, or is it just for me?" *Id.* at 54. Employees and passengers complained of altercations with Plaintiff, including that she was "unprofessional," "condescending [and] snide," "rude," "hostile," "verbally abusive," "caustic," and "chew[ed]" out another employee. *Id.* at 38, 40, 43, 49, 52, 57. Defendant issued Plaintiff a performance level 3 discipline on April 2, 2012. *Id.* at 59. The performance level 3 form advises that additional issues could result in further discipline or termination, and Plaintiff signed. *Id.*

Plaintiff received at least four complaints between April 2012 and June 2012. Doc. 72-3 at 12-24. Plaintiff threatened to kick passengers off a flight. Doc. 72-3 at 12-

13. She "rudely scolded [passengers] like children for missing [their] connecting flight." *Id.* at 15-16. Without explanation, Plaintiff took a carry-on bag from a passenger to check, and gave him no opportunity to remove medications that he needed in-flight. *Id.* at 20-21. Plaintiff was "rude and negative" to two employees flying as passengers in a volunteer program, and made "negative comments" about Defendant in front of other passengers. *Id.* at 23.

Defendant suspended Plaintiff in June 2012. *Id.* at 26. Thereafter, Plaintiff, the Union, and Defendant entered into a Last Chance Agreement ("LCA") regarding Plaintiff's employment. *Id.* at 28-34. Under the LCA, Plaintiff agreed she would not violate Defendant's policies or procedures for twenty-four months, and that a violation would justify immediate termination. *Id.* Plaintiff also agreed to waive any existing claims against Defendant. *Id.* at 29-30. Plaintiff returned to work (Doc. 72-1 at 84), but also filed an Equal Employment Opportunity Commission ("EEOC") charge of disability discrimination and retaliation (Doc. 72-3 at 36). Plaintiff admits she filed the EEOC charge to protect her employment because she "wanted a clean slate" and to "expunge[]" her prior discipline. Doc. 72-1 at 85-86.

Plaintiff received at least eight complaints between August 2012 and March 2013. Doc. 72-3 at 40-61. She "reprimand[ed]" other employees in front of passengers (*id.* at 40-41), was "condescending" to a passenger requesting medical assistance (*id.* at 43-44), and was "rude, impolite, disrespectful, and unhelpful" in response to a passenger inquiry (*id.* at 47). When flight issues arose, Plaintiff suggested to one passenger that he buy a ticket with a competitor (*id.* at 51), and she became "sarcastically defensive" with another (*id.* at 53). Plaintiff spoke to another passenger in "a very abrasive tone," was rude in handling the passenger's issue, and suggested he fly with a competitor. *Id.* at 58.

On March 15, 2013, Defendant determined that Plaintiff's actions had violated the terms of the LCA and terminated her employment. *Id.* at 61. In total, between Plaintiff's transfer to Phoenix in December 2010 and her termination in March 2013, she received at least thirteen passenger complaints and sixteen employee complaints. Plaintiff knows of

no other employee who received as many complaints and was not disciplined or terminated. Doc. 72 at 12 ¶ 83; Doc. 74 at 4 ¶ 83.

Plaintiff had a colostomy apparatus when she began working for Defendant in Phoenix in December 2010. Doc. 72-1 at 71, 81-83. In January 2011, Plaintiff requested – and at some point Defendant granted – two accommodations: a bypass through TSA Security at Phoenix Sky Harbor Airport, and a locker to store medical supplies. Doc. 72-3 at 65, 68. Plaintiff cites, without explanation, her deposition testimony indicating she discussed accommodations with one of Defendant's employees. Doc. 74 at 3 ¶ 65; Doc. 72-1 at 35-36. But she does not dispute Defendant's evidence that it granted the accommodations. *See id.*; Doc. 72-3 at 65, 68. Plaintiff admits she could perform her job without the bypass and locker (Doc. 72-1 at 54), and she made no other accommodation requests (Doc. 72-3 at 65, 68).

## II. Summary Judgment Standard.

A principal purpose of summary judgment is to dispose of factually or legally unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id. at* 323. Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. "Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly number paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and *a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed*; and (2) any additional facts that establish a genuine issue of material fact . . . . Each additional fact . . . *must refer to a specific admissible portion of the record where the fact finds support*." LRCiv 56.1(b) (emphasis added). Statements made upon "information and belief" are inadequate for purposes of summary judgment. *Suckow Borax Mines Consol. v. Borax Consol.*, 185 F.2d 196, 203 (9th Cir. 1951).

### III. Defendant's Motion for Summary Judgment.

Defendant argues Plaintiff cannot establish a prima facie case of disability discrimination, and, even if she can, Defendant had legitimate, nondiscriminatory reasons for Plaintiff's discipline and termination. Doc. 71 at 12-13. Defendant also argues that, under the LCA, Plaintiff waived any claims existing before June 2012. *Id.* at 7-9.

#### A. Disability Discrimination.

The ADA prohibits employers from discriminating against individuals on the basis of their disabilities. 42 U.S.C. § 12112(a). At the summary judgment stage, an ADA plaintiff has the burden of making a prima facie case of discrimination. The plaintiff must produce evidence that (1) she has a disability under the ADA, (2) she is qualified, i.e., that she can perform the essential functions of her job with or without a reasonable accommodation, and (3) she suffered an adverse employment action because of her disability. *See Snead v. Metro. Prop. & Cas. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001); *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 816 (9th Cir. 1999); *Wellington v. Lyon Cty. Sch. Dist.*, 187 F.3d 1150, 1154 (9th Cir. 1999) ("To survive a motion for summary judgment on [her] ADA claim, [the plaintiff] must be able to show sufficient

1 | facts to meet [her] burden of production of evidence on each element of the prima facie case."). "'[T]he requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Chuang*, 225 F.3d at 1124 (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)); *Snead*, 237 F.3d at 1091-92 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

"'Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee.'" *Wallis*, 26 F.3d at 889 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). The burden of production then shifts to the employer to articulate a non-discriminatory reason for the adverse employment action. *See Snead*, 237 F.3d at 1093 (holding that the traditional burden-shifting framework for analyzing Title VII cases applies in ADA cases); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004) (same); *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003) ("The Courts of Appeals have consistently utilized this burden-shifting approach when reviewing motions for summary judgment in [ADA] disparate-treatment cases.") (citation omitted). If the employer offers a reason that disclaims any reliance on the employee's disability in having taken the employment action, the burden shifts back to the employee to show that the reason was pretextual. *See Snead*, 237 F.3d at 1093.

Defendant concedes that Plaintiff's colostomy constitutes a disability under the ADA, and does not seem to dispute that Plaintiff is a "qualified individual." Doc. 71 at 13 & n.7. Defendant argues that Plaintiff cannot show she was disciplined or terminated because of her disability, and that her extensive record of complaints provides a legitimate, nondiscriminatory reason for her discipline and termination. *Id.*

Plaintiff cites no evidence supporting that her discipline and termination were because of her disability and not because of her lengthy record of complaints from passengers and employees. Plaintiff's conclusory assertions about Defendant's actions

and motives are insufficient to create a triable issue. *See Anderson*, 477 U.S. at 249-52. Plaintiff cannot establish a prima facie case of disability discrimination.

Even if Plaintiff had established a prima facie case, Defendant has satisfied its burden to articulate a non-discriminatory reason for its discipline and termination of Plaintiff. *See Snead*, 237 F.3d at 1093. From December 2010 to March 2013, Plaintiff received no less than thirty complaints about her rude and disrespectful behavior to passengers and other employees, in violation of Defendant's policies. Plaintiff received coaching with each incident and level of discipline (*see, e.g.*, Doc. 72-2 at 10, 18), but continued to receive complaints. Defendant's well-documented reasons for discipline and termination disprove any reliance on Plaintiff's disability, and Plaintiff cites no evidence suggesting that Defendants reasons were pretextual. *See Snead*, 237 F.3d at 1093. The Court will grant summary judgment on Plaintiff's claim for disability discrimination.[4]

**B. Failure to Accommodate.**

Defendant moves for summary judgment on Plaintiff's failure to accommodate claim (Doc. 71 at 9), but Plaintiff pleads no such claim. When Defendant previously moved to dismiss Plaintiff's third amended complaint, it argued against Plaintiff's disability discrimination and breach of contracts claims. Doc. 45. Plaintiff defended those two claims alone, and never argued that she had also pled failure to accommodate. Doc. 47. Thus, the Court recognized no such claim. Doc. 54.

Plaintiff said Defendant "denied requests for accommodations" in her EEOC charge (Doc. 72-3 at 36), and now seems to assert failure to accommodate (Doc. 4 at 7-9). But prior to her response to Defendant's summary judgment motion, Plaintiff never advanced this claim. "Summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992

---

[4] The Court need not address Defendant's arguments regarding waiver under the LCA, but notes that Plaintiff signed the LCA and does not argue it is invalid. *See* Doc. 74 at 3 ¶¶ 41-45, 5-10.

(9th Cir. 2006). The Court therefore will not address Defendant's arguments on this issue.

Even if Plaintiff has pled failure to accommodate, she admits or fails to properly deny nearly all of Defendant's assertions of fact. At trial, Plaintiff would have to prove she has a disability, is a qualified individual under the ADA, and that she was denied a reasonable accommodation that enabled her to perform essential job functions. *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137-38 (9th Cir. 2002); *Dunlap v. Liberty Nat. Prods., Inc.*, 878 F.3d 794, 798-99 (9th Cir. 2017). Plaintiff admits that Defendant granted her two accommodation requests.

**IT IS ORDERED**:

1. Defendant's motion for summary judgment (Doc. 71) is **granted**.
2. Defendant's motion to supplement the record (Doc. 75) is **denied** as moot.
3. The Clerk of Court shall terminate this matter and enter judgment accordingly.

Dated this 11th day of October, 2018.

*David G. Campbell*
David G. Campbell
Senior United States District Judge